IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE WESTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0714-D |
| | § | |
| HIGHMARK RESIDENTIAL, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this hostile work environment action, plaintiff Nicole Weston ("Weston") sues her

former employer, Highmark Residential, LLC ("Highmark"), for sex discrimination under

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the

Civil Rights Act of 1991, 42 U.S.C. § 1981a.  Highmark moves for summary judgment.  For

the reasons that follow—essentially, that Highmark is not liable for the harassing conduct of

a coworker maintenance manager because it lacked actual or constructive notice of the

harassment, and Weston failed to take advantage of the corrective opportunities that

Highmark provided—the court grants Highmark's motion and dismisses this action with

prejudice.

I

In June 2022 Weston began working for Highmark, a residential property

management company, when Highmark took over management of The Gio apartment

complex in Plano, Texas ("The Gio").[1]  Weston was employed as a leasing manager, a position she had held with the prior management company at The Gio.  Johnnie McConnell ("McConnell"), whom Highmark employed as a maintenance manager, began working at The Gio shortly thereafter.

Within the first week of working together at The Gio, McConnell told Weston that he thought she was "hot"— a comment that she initially brushed off.  By July 2022, however, McConnell's comments became more frequent: he began complimenting Weston's appearance and body on a daily basis and sending sexual text messages that she considered inappropriate.  Weston did not initially tell McConnell that she found his behavior inappropriate because Joane Alford ("Alford"), the Regional Manager of The Gio, had informed the staff that McConnell was the "golden boy" of the company, that he had been with Highmark for 20 years, and that everyone loved him and he was going to fix the property, and Weston did not want to "make waves" by complaining.  *Id.* at 4.

In late July 2022, Weston and McConnell were walking alone to a vacant apartment. McConnell made explicit comments to Weston about wanting to have sex with her in the apartment right then and there, at which point she rebuffed his advances.  Following this incident, Weston immediately returned to the leasing office and informed Nicole Perry

---

[1]In deciding Highmark's summary judgment motion, the court views the evidence in the light most favorable to Weston as the summary judgment nonmovant and draws all reasonable inferences in her favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

("Perry") what had happened. Perry was the Assistant Property Manager and the second highest ranking member of management at The Gio.

Weston continued to report McConnell's ongoing harassment to Perry, doing so upwards of 15 times between July 2022 and January 2023. And she informed Perry that she was uncomfortable surveying apartments with McConnell, which was one of the duties associated with her position. McConnell continued to make Weston uncomfortable by regularly touching her shoulder, arm, leg, and thigh, despite her repeated instructions to stop. McConnell also continued to make inappropriate comments about wanting to go to her home to massage her, knowing where she lived, and knowing what her boyfriend looked like.

On January 25, 2023 Weston informed her supervisor, Property Manager Latasha Bell ("Bell"), that McConnell was repeatedly creating situations that made her uncomfortable and that she did not know what to do. Bell advised her to go to Human Resources ("HR"), and, on January 26, 2023 Weston sent an email to HR Manager Trina Casteel ("Casteel") and lodged a complaint about McConnell's sexual harassment. Weston spoke on the phone with Casteel the following day. During that conversation, Casteel mentioned that no one had lodged a complaint before against McConnell in the 20 years he had been with Highmark. Weston perceived this statement to be a suggestion that Casteel was not taking her complaints seriously.

Casteel began an investigation that day, and she spoke with several witnesses over the course of her investigation, which took place between January 27, 2023 and February 23, 2023. Because Weston was struggling with mental health issues and McConnell had made

another sexually inappropriate comment to her the week before, Weston tendered her two-week notice of resignation on February 16, 2023. Casteel determined that McConnell had engaged in inappropriate actions and recommended his termination, and he was terminated on February 28, 2023 (after Weston tendered her two week notice but before her last day of work). This lawsuit followed.

Highmark now moves for summary judgment. Weston opposes the motion, which the court is deciding on the briefs, without oral argument.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond her pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen LandCare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076. Courts must view "all facts and inferences . . . in the light most favorable to the nonmoving party" and "resolve factual controversies in favor of the

-4-

nonmoving party . . . when both parties have submitted evidence of contradictory facts."

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations omitted).

III

To establish a hostile work environment claim, Weston must prove five essential elements:

> (1) she is member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege' of [Weston's] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (citation omitted). The parties agree that the only element at issue for purposes of this motion is the fifth: whether Highmark knew or should have known of McConnell's harassment of Weston and failed to take prompt remedial action.[2]  To satisfy this element, "an employee must take advantage of corrective opportunities provided by the employer." *Id.* at 437 (citing *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 300 n.3 (5th Cir. 2001)).  But "if an employee believes that bringing a subsequent sexual harassment complaint would be futile, or 'it becomes objectively obvious that the employer has no real intention of stopping the harassment, the harassed employee is not obligated to go through the wasted motion of reporting the harassment.'" *Id.* (quoting *Woods*, 274 F.3d at 300-01).

---

[2]It is undisputed that McConnell was not a supervisor with immediate (or successively higher) authority over Weston.  Were that the case, Weston would need to satisfy only the first four elements, and the fifth element would not be at issue.

Highmark maintains that it did not have actual or constructive notice of the harassment. This is so, Highmark posits, because Weston never reported the harassment to anyone with remedial authority, and the harassment was not so open and conspicuous that anyone with remedial authority should have known about the harassment until Weston reported it to her supervisor, at which point Highmark did take prompt remedial action. Weston does not contend that Highmark failed to take prompt remedial action after she made a formal report to her supervisor in January 2023.[3] But she maintains that Highmark had notice of the alleged harassment prior to her formal complaint to Bell (the Property Manager) and HR because she informed Perry (the Assistant Property Manager) of the harassment immediately after it began in July 2022, and did so upwards of 15 times over the following months. Weston therefore maintains that Highmark failed to take prompt remedial action by not taking remedial action before Weston made her formal complaint.

IV

Highmark contends that it did not have actual or constructive notice of McConnell's alleged harassment of Weston until she reported the harassment to her supervisor and then to HR in late January 2023, at which point Highmark took prompt remedial action. Weston

---

[3]Weston states in her statement of facts that she reached out to Casteel, the HR Manager, on January 26, 2023, and that Casteel began investigating the next day. P. Resp. (ECF No. 26) at 6. According to Weston, the investigation took place over the course of a month, Casteel spoke with several witnesses, and when Weston sent an email to Casteel on February 16, 2023 expressing concern about how long the investigation was taking, Casteel did not respond for 5 days. But Weston does not suggest in her argument section or cite any support for the premise that the remedial measures taken after her formal HR report were not sufficiently prompt or adequate.

counters that Highmark had constructive notice of the harassment before she formally complained in January 2023, and, therefore, that any remedial action was not prompt.

A

An employer's knowledge of harassment may be actual or constructive. *Williamson v. City of Houston*, 148 F.3d 462, 465 (5th Cir. 1998). An employer has actual notice of the harassment "if a person within the organization who has the 'authority to address the harassment problem' or an 'affirmative duty' to report harassment learns of the harassment in question." *Abbt v. City of Houston*, 28 F.4th 601, 607 (5th Cir. 2022) (quoting *Williamson*, 148 F.3d at 466); *see also Sharp v. City of Houston*, 164 F.3d 923, 929-30 (5th Cir. 1999) ("Thus, the key to whose knowledge may be imputed to the employer is remedial power: There is no actual knowledge until someone with the authority to address the problem is notified." (citation and internal quotation marks omitted)).

Alternatively, a plaintiff can "demonstrate constructive notice by 'showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge.'" *Contreras v. Waffle House, Inc.*, 2002 WL 1477442, at *8 (N.D. Tex. July 9, 2002) (Solis, J.) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982)). "If the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes, it is unreasonable not to have done so, and there is constructive notice." *Sharp*, 164 F.3d at 930 (citing *Williamson*, 148 F.3d at 465; *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 478 (5th Cir. 1989)). And when "the appropriate persons within th[e] enterprise"—i.e., individuals "with remedial power over the

harasser"—knew or should have known of the harassment, constructive knowledge can be imputed to the employer. *Id.*

B

According to Weston, the question whether Highmark should have known of her alleged harassment before she made her HR complaint in January 2023 presents a genuine issue of material fact. Weston has produced evidence that she alerted Perry, "the second highest-ranking employee at The Gio," of McConnell's behavior beginning shortly after the harassment began and several months before her formal complaint to HR, and that Perry declined to report Weston's complaints "up the chain." P. Resp. Br. (ECF No. 26) at 14. But Weston neither argues nor provides evidence that would enable a reasonable jury to find that Perry had any remedial authority over McConnell or that Perry had the responsibility as part of her employment duties to pass along Weston's allegations up the chain of command. Nor does Weston produce any other evidence that would enable a reasonable jury to find that anyone at Highmark with remedial power or an affirmative duty to pass on her allegations had actual or constructive knowledge that McConnell was harassing her. Highmark has produced evidence that Perry was neither Weston's nor McConnell's supervisor, nor did Perry have any remedial power over McConnell, and Weston does not suggest or produce any evidence to show otherwise.

Moreover, Weston neither contends nor provides evidence that the harassment was so "open and pervasive that the employer should have known of it, had it but opened its corporate eyes[.]" *Sharp*, 164 F.3d at 930. She does not cite any summary judgment

-8-

evidence that would enable a reasonable jury to find that McConnell harassed Weston in the open, where anyone with remedial power would or should have known of the harassment. She has therefore failed to produce evidence from which a reasonable jury could find that Highmark knew or should have known that McConnell was harassing Weston before January 2023, when she complained to her immediate supervisor, Property Manager Bell, and formally complained to HR. And the evidence would only enable a reasonable jury to find that, once Weston did make a formal complaint, HR Manager Casteel initiated an investigation almost immediately, determined that McConnell had engaged in inappropriate actions, recommended that he be terminated, and McConnell was discharged.

V

A

Highmark contends that it is entitled to summary judgment because Weston did not take advantage of the corrective opportunities that Highmark provided when she failed to make a report of the alleged harassment to her supervisor, HR, or the employee help line as instructed in the company's anti-harassment policy. Highmark maintains that Weston knew about the anti-harassment policy and unreasonably delayed reporting her harassment, and that she has provided no evidence that reporting the harassment to the appropriate persons within the company would have been futile.

Weston counters that she was not obligated to follow the formal reporting procedures delineated in Highmark's anti-harassment policy because she reasonably believed that doing so would be futile. She posits that she was not obligated to make a formal report under the

-9-

policy given her belief that a formal complaint would have been futile considering Highmark's "view of McConnell as a golden boy who could do little, if anything, wrong[.]" P. Resp. (ECF No. 26) at 14.

B

"[A]n employee must take advantage of corrective opportunities provided by the employer." *Harvill*, 433 F.3d at 437 (citing *Woods*, 274 F.3d at 300 n.3). "An employee's decision to refrain from informing the employer about the harassment will be excused 'once it becomes objectively obvious that the employer has no real intention of stopping the harassment,' as such reporting is 'wasted motion.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 655-56 (5th Cir. 2012) (quoting *Woods*, 274 F.3d at 300–01).

C

Highmark cites language in its anti-harassment policy—language with which Weston was indisputably familiar—that provides that "[a]ny person who has a complaint under this policy should notify their immediate supervisor or Human Resources," and instructs employees who do not feel comfortable resolving disputes with their alleged harassers to "please report the conduct promptly by notifying your supervisor, a representative of the Human Resources Department, or by utilizing the Employee Protection Line[.]"  D. App. (ECF No. 24) at 213.  Highmark therefore maintains that, by not informing any of the identified parties that McConnell was harassing her, Weston failed to take advantage of the corrective opportunities that Highmark offered.

Weston responds that she did not act unreasonably when she declined to report the

harassment through the anti-harassment policy guidelines because she believed subsequent complaints of harassment would be futile considering that Highmark management viewed McConnell as "a golden boy who could do little, if anything, wrong." P. Resp. (ECF No. 26) at 14.[4]

For an employee to be excused from her obligation to take advantage of an employer's preventive or corrective opportunities, it must be "objectively obvious that the employer has no real intention of stopping the harassment." *Woods*, 274 F.3d at 301. Weston has produced evidence that she believed reporting McConnell's harassment would be futile because Highmark, and, specifically, Alford (the Regional Manager) viewed McConnell as the golden boy who had been with the company for 20 years who was coming to fix the property. Even when accepted as true and viewed in the light most favorable to Weston, this is insufficient summary judgment evidence to enable a reasonable jury to find that it was "objectively obvious" that Highmark had no intention of stopping the hostile work environment. While this evidence might permit a reasonable jury to find that McConnell was viewed favorably by a select group of company managers, it is undisputed that, once Weston informed her supervisor, Property Manager Bell, on January 25, 2023 about McConnell's

---

[4]Weston also maintains that the policy did not require her to report her complaints of harassment to any particular person or entity. This is contrary to the plain language of the policy, which instructs employees to "notify their immediate supervisor or Human Resources" of a policy violation, and that if they are uncomfortable or unsuccessful in addressing their harasser directly, to "please report the conduct promptly by notifying your supervisor, a representative of the Human Resources Department, or by utilizing the Employee Protection Line[.]" D. App. (ECF No. 24) at 213.

harassing conduct, Bell advised her to go HR.  On January 26, 2023 Weston sent an email to HR Manager Casteel and lodged a complaint about McConnell's sexual harassment. Casteel initiated an investigation almost immediately.  She determined that McConnell had engaged in inappropriate actions and recommended his termination, and he was terminated on February 28, 2023.  The summary judgment evidence would only enable a reasonable jury to find that Highmark would have a real intention of stopping McConnell's sexual harassment of Weston.

V

Because Weston has not produced evidence from which a reasonable jury could find that Highmark had actual or constructive notice of the alleged harassment or that her failure to report the harassment pursuant to Highmark's anti-harassment policy was excused, she has failed to produce evidence from which a reasonable jury could find in her favor on the fifth essential element of her hostile work environment claim, and Highmark is entitled to summary judgment dismissing this claim.

\*    \*    \*

For the reasons explained, the court grants summary judgment in favor of Highmark on Weston's hostile work environment claim under Title VII and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

July 3, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE

-13-